IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL KOZIARA,

                              Plaintiff,

        v.                                                OPINION & ORDER

BNSF RAILWAY COMPANY,                                     13-cv-834-jdp

                              Defendant.

At trial, plaintiff Michael Koziara succeeded on his claim that defendant BNSF Railway Company retaliated against him for reporting a workplace injury, in violation of the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20109. A jury awarded Koziara $425,724.64, which included lost wages, damages for pain and suffering, and punitive damages. The court entered judgment on March 11, 2015.

Two post-trial motions are before the court. First, BNSF moves for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50, or, in the alternative, for a new trial, pursuant to Rule 59. Dkt. 212. Second, Koziara moves for equitable relief, asking the court to order BNSF to pay certain taxes to the Railroad Retirement Board (RRB) and to support Koziara's claim for service credit. Dkt. 213.

This case was well-tried by both sides, and BNSF put on a strong defense. The court's task here is not to second-guess the jury, but to determine whether the verdict was supported by the evidence. The court must view the evidence in a light favorable to the verdict, and from this perspective, there is no basis to overturn any aspect of it. The court will therefore deny BNSF's motions for judgment as a matter of law and for a new trial. The court will also

deny Koziara's request for equitable relief because the issues that he raises are appropriately addressed to the RRB, not to this court.

BACKGROUND

The court recounted the material facts of the case in its summary judgment opinion. Dkt. 73. To briefly summarize:

Koziara began working for BNSF more than 30 years ago, in the company's Maintenance of Way Department. On September 9, 2010, Koziara was supervising a work crew assigned to remove and reinstall crossing planks in East Winona, Wisconsin. Koziara was injured when a crossing plank struck him in the left shin. Although Koziara did not think that he was seriously injured at the time, he later learned that he had fractured his tibia. Koziara called two of his co-workers to explain that he would have to miss work because of an injury. But he initially told them that the injury had occurred over the weekend, at home. Later, Koziara called these co-workers again and confessed that the injury had actually occurred at work.

Koziara also called his supervisor, Roadmaster Michael Veitz, to report the accident and injury. Koziara completed an injury report, which BNSF accepted, and Veitz investigated the accident. Veitz concluded that Koziara had moved into the work zone while a front-end loader was prying up a crossing plank, contrary to BNSF's safety rules. But Veitz's investigation also revealed another possible source of Koziara's injury: an event that occurred about a week before the accident. Employees reported seeing Koziara jumping off of a trailer and hopping around afterward as if injured. Worse, employees reported that when this possible injury occurred, Koziara had been taking used railroad ties to give to a friend.

2

BNSF began two separate disciplinary proceedings against Koziara. The first was to address whether he had violated BNSF's safety policies during the September 9 incident. The second was to address whether Koziara had stolen company property by taking ties without permission. BNSF eventually suspended Koziara for violating workplace safety rules and later terminated him for stealing company property.

Koziara filed suit in this court on December 4, 2013, alleging that both of BNSF's disciplinary actions against him were in retaliation for reporting a workplace injury. At summary judgment, the court concluded that there was no dispute that Koziara had satisfied three of the four elements of his claim under FRSA. But there were genuine disputes of fact as to one element—whether Koziara reported his injury in good faith—and as to BNSF's affirmative defense to liability—whether the company would have taken the same adverse actions against Koziara despite his injury report. The case proceeded to a trial on these two issues, bifurcated into a liability phase and a damages phase. A jury ultimately found in Koziara's favor and awarded him $175,725.64 in lost wages, $125,000 for emotional pain and suffering, and $125,000 in punitive damages. Dkt. 181 and Dkt. 183.

ANALYSIS

Two post-trial motions are before the court. First, BNSF has raised a series of challenges to the jury's verdict, essentially contending that it is entitled to judgment as a matter of law on every aspect of this case, or, in the alternative, to a new trial. Second, Koziara has moved for equitable relief in the form of an order requiring BNSF to help him obtain service credit from the RRB.

**A.  BNSF's motion for judgment as a matter of law or for a new trial**

At trial, BNSF moved for judgment as a matter of law on three issues: (1) whether a jury could find by a preponderance of the evidence that Koziara had proven every element of his claim under FRSA; (2) whether a jury would have to find by clear and convincing evidence that BNSF had proven its statutory affirmative defense; and (3) whether Koziara could recover lost wages, damages for emotional distress, and punitive damages. BNSF has now renewed each of these challenges in one post-trial motion under Rule 50(b). Dkt. 212. BNSF has also moved for a new trial under Rule 59(a)-(d), and to amend the judgment under Rule 59(e). *Id.*

"In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012). The court reviews the entire record but does not reweigh the evidence, make credibility determinations, or consider evidence favorable to the moving party that the jury was not required to believe. *Id.* Thus, BNSF is entitled to judgment as a matter of law only if the jury did not have a "legally sufficient evidentiary basis" to find in Koziara's favor. *Id.*; Fed. R. Civ. P. 50(a)(1).

A new trial is appropriate under Rule 59 "if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992). Likewise, a motion to amend the judgment under Rule 59(e) "will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722

F.3d 939, 954 (7th Cir. 2013) (internal citations and quotation marks omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations and quotation marks omitted).

After reviewing BNSF's motion with these standards in mind, the court will not set aside the jury's verdict with regard to liability or with regard to damages. Nor is the court persuaded that a new trial would be appropriate in this case.

### 1. Elements of Koziara's claim under FRSA

To prevail on a retaliation claim under FRSA, Koziara needed to show by a preponderance of the evidence that: (1) he engaged in protected activity; (2) BNSF knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. 49 U.S.C. § 20109(d)(2); *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). At summary judgment, there was a genuine dispute of fact as to whether Koziara reported a workplace injury in good faith—part of the "protected activity" that the first element requires. But the court concluded that there was no genuine dispute concerning the second, third, and fourth elements. BNSF now challenges whether Koziara adduced sufficient evidence of good faith and whether the court erred by not instructing the jury on the fourth element.

#### a. Good faith

BNSF contends that no rational jury could have found for Koziara on the issue of whether he reported his workplace injury in good faith. Dkt. 215, at 3. FRSA protects only an employee's "*good faith* act done . . . to notify, or attempt to notify, the railroad carrier or

the Secretary of Transportation of a work-related personal injury." 49 U.S.C. § 20109(a)(4) (emphasis added). The parties agree that reporting an injury in good faith requires both objective and subjective reasonableness. Dkt. 215, at 4 and Dkt. 217, at 30. Thus, when Koziara reported his injury on September 14, 2010, he must have actually believed that his injury was work-related, and that belief must have been objectively reasonable.

According to BNSF, Koziara's "shifting stories" about the cause of his injury precluded the jury from finding that he reported his injury in good faith, subjectively or objectively. BNSF cross-examined Koziara at length about the discrepancies in his account of the injury, but he had an explanation for each of them. For example, Koziara explained that he did not report the accident on the day that it occurred because he did not think that his injury required a trip to the hospital. Tr. 2a, at 26:23-27:2.[1] With regard to the story that he told his co-workers about being injured at home, Koziara testified that he made up that story after learning from a doctor that he had fractured his tibia. Tr. 2a, at 34:6-10. At that point, more than 72 hours had passed since the injury, and so Koziara was afraid that if he reported the true cause of the injury, then BNSF would discipline him for making a late report. Tr. 2a, at 34:18-21, 36:4-8. Finally, Koziara denied injuring his left leg on either of the other occasions that BNSF identified. Tr. 2a, at 31:21-24, 32:11-34:5, 74:7-75:1.

The jury found that Koziara had shown by a preponderance of the evidence that he reported a work-related injury in good faith. Dkt. 181. The evidence at trial supported the jury's finding, both in terms of Koziara's subjective belief and the objective reasonableness of that belief. Subjectively, the jury was entitled to credit Koziara's testimony that when he

---

[1] Citations to trial transcripts are by day, session, page, and line. Thus, "Tr. 2a, at 26:23," refers to the transcript from the second day of trial, morning session, page 26, line 23.

6

reported his injury, he believed that he had been injured at work on September 9. The jury was also entitled to credit Koziara's explanations for the different stories that he told to his co-workers about the injury. Koziara's different stories might have undermined his credibility, as BNSF argued at trial. But this evidence did not *require* the jury to find against Koziara on the subjective prong. Objectively, the underlying injury is not in dispute. A wooden plank weighing 1,200 pounds struck Koziara in the leg. A few days later, a doctor performed an x-ray and told Koziara that he had fractured his tibia. Koziara formally reported his injury to BNSF shortly after receiving this information. From this evidence, the jury was entitled to conclude that Koziara's subjective belief was sincere and objectively reasonable.

BNSF's motion essentially asks the court to reweigh the evidence presented in this case and to supplant the jury's credibility determinations with the court's own appraisal of Koziara's testimony. But Rule 50 is not a mechanism for courts to reevaluate the evidence at trial and reach their own conclusions. The relevant inquiry is whether the jury's verdict could reasonably be based on the evidence adduced at trial. *Passananti*, 689 F.3d at 659. Here, the jury's verdict meets this standard. The court will therefore deny BNSF's motion on this issue.

### b. Contributing factor

The fourth element of Koziara's FRSA claim required him to show that his injury report was "a contributing factor" to BNSF's adverse actions. A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Addis v. Dep't of Labor*, 575 F.3d 688, 691 (7th Cir. 2009) (internal citations and quotation marks omitted). Over BNSF's objection, the court concluded at summary judgment that Koziara had proven causation as a matter of law because his injury report undisputedly triggered the investigations that led to his suspension and to his

7

termination. Dkt. 73, at 15-18. The court determined that FRSA uses a broad conception of causation that is favorable to employees; it allows an employee to establish causation with a "chain of events" theory such as the one that Koziara invoked in this case.

For the most part, BNSF's post-trial motion merely renews its objection to the court allowing Koziara to prove causation through a "chain of events" theory, arguing that such a framework is inconsistent with FRSA and with retaliation case law in general. BNSF presented this position at summary judgment, in motions in limine, and through its proposed jury instructions. The court has explained its reasons for rejecting these arguments and will not repeat those reasons here. BNSF has preserved the issue for appeal.[2]

A new aspect of BNSF's post-trial motion is whether the causation element came back into play at trial because of Veitz's testimony. BNSF contends that Veitz's testimony "showed that Mr. Koziara's theft (or disposal) of company property was discovered independently of Mr. Veitz's investigation or review of Mr. Koziara's injury report." Dkt. 215, at 9. According to BNSF, it was able to break a link in the chain of events that Koziara used to prove causation at summary judgment, and so the court should have sent the element to the jury. The pertinent testimony was as follows:

Q. . . . Well, when did you learn about the switch ties?

---

[2] Neither party has directed the court to binding precedent on whether FRSA allows a chain of events theory of causation. But other district courts within this circuit have addressed the issue recently. *See, e.g.*, *Burton v. Ill. Cent. R.R. Co.*, No. 13-cv-00769, 2016 WL 302109, at *7 (N.D. Ill. Jan. 25, 2016) ("This chain of events is sufficient to create a genuine issue of material fact as to whether his injury report was a 'contributing factor' to Burton's termination."); *Armstrong v. BNSF Ry. Co.*, No. 12-cv-7962, 2015 WL 5180589, at *10 (N.D. Ill. Sept. 4, 2015) ("This is known as the 'chain of events' approach to causation under the FRSA, and evidence substantiating this approach shows that a triable issue of fact exists as to causation.").

A.  The following week after the reenactment I was in Bay City, Wisconsin and I was informed by another employee that possibly [Koziara] got hurt while taking switch ties at Winona Junction on a different date.

Q.  All right.

A.  My investigation was completely, for the most part I guess, over with that incident. This is a completely different situation when I learned about the switch ties being taken.

Tr. 2a, at 128:16-129:1.

The court does not agree with BNSF that Veitz's testimony definitively put the element of causation back in issue. Veitz passed information about Koziara's alleged injury—as well as the potential theft—on to his supervisors. Tr. 2p, at 67:10-68:17. Thus, contrary to BNSF's contention, Veitz was at least somewhat involved in the investigation even after learning about the stolen ties. But regardless of Veitz's involvement, BNSF does not dispute that *its* investigation was ongoing when it learned about the stolen ties. The larger investigation is what matters for purposes of Koziara's chain of events theory because the *railroad carrier* is liable for retaliation under § 20109. Koziara reported his injury to BNSF, the company investigated that injury, and then the company initiated disciplinary hearings which led to adverse employment actions. The undisputed evidence at summary judgment established this theory of causation, and Veitz's testimony did not put the issue back into genuine dispute.

Even if BNSF adduced evidence at trial from which the jury could doubt that Koziara's injury report was a contributing factor in his suspension and termination, BNSF's effort was too late. The court resolved the issue of causation at summary judgment because BNSF failed to adduce evidence that put the element into genuine dispute. "[S]ummary

judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal citations and quotation marks omitted). The record at summary judgment, which included Veitz's deposition testimony, affirmatively established that BNSF learned about Koziara's alleged theft during the course of investigating his injury report. *See* Dkt. 30 (Veitz dep. 76:12-19).

It would have been manifestly unfair to Koziara to change course mid-trial and require him to prove an element that the court had already resolved. Veitz was BNSF's witness, so the company was in the best position to present his account of the relevant events at summary judgment, or at the very latest, in a motion for reconsideration of the court's summary judgment order *before* trial. Koziara could not have reasonably anticipated Veitz's trial testimony regarding when he learned about the stolen ties, particularly given how starkly that testimony conflicted with Veitz's earlier deposition testimony on this point. Thus, BNSF's post-trial motion is merely a request for another bite at the summary judgment apple. *Cf. Verson Wilkins Ltd. v. Allied Prods. Corp.*, No. 87-cv-5325, 1990 WL 6898, at *2 (N.D. Ill. Jan. 9, 1990). The court will deny BNSF's request.

The cases to which BNSF cites do not compel a contrary result. For example, in *Wimberly v. Severn Trent Services, Inc.*, the court concluded at summary judgment that the plaintiff had identified a similarly situated comparator for purposes of establishing a prima facie case of race discrimination. No. 05-cv-2713, 2007 WL 666767, at *4 n.6 (E.D. Pa. Feb. 26, 2007). Although the case proceeded to trial, the court granted a Rule 50(a) motion at the close of the plaintiff's case. *Id.* at *1. As part of that ruling, the court concluded that the

comparator was not, in fact, similarly situated to the plaintiff. *Id.* at *4. The court explained the ruling in a footnote:

> In my summary judgment motion memorandum, I noted that Gerhart and Wimberly were similarly situated. . . . That finding was based on the summary judgment record in which the evidence showed that the plaintiff did not manage any of the purchasing employees despite her title and the respective purchasing duties of Gerhart and Wimberly in the Purchasing Department were not clear. In addition, I made that finding in considering the plaintiff's *prima facie* case. . . . The trial record was very different, the roles of Gerhart and Wimberly at Severn Trent were clarified, and my determination here relates to the plaintiff satisfying her burden of persuasion under the third prong of the *McDonnell Douglas* test.

*Id.* at *4 n.6. The last sentence—most of which BNSF omitted from the quotation in its brief, *see* Dkt. 215, at 10—explains why *Wimberly* does not apply to this case. There, the court did not revive a dispute over an element of the plaintiff's prima facie case after having granted summary judgment on that element. Rather, the court concluded that the comparator was not similarly situated for purposes of an entirely different step in the *McDonnell Douglas* framework.

As for the other authority that BNSF identifies, those cases dealt with courts initially *denying* summary judgment then granting (or threatening to grant) a motion for judgment as a matter of law when the evidence at trial differed from the evidence presented at summary judgment *See, e.g., United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980); *Jacobsen v. Sramek*, No. 07-cv-03533, 2009 WL 1286348, at *2 (N.D. Cal. May 7, 2009). But this case has the opposite procedural posture: at summary judgment, the court concluded that there was no genuine dispute of fact regarding the question of causation. BNSF has not identified precedent that requires a court to "un-grant" summary judgment mid-way through trial when

the evidence or testimony varies slightly from the parties' presentations at summary judgment.

Veitz's testimony did not put the element of causation back in issue. And even if the testimony was relevant to causation, BNSF should have had it available to present at the summary judgment stage of the case. BNSF is not entitled to judgment as a matter of law on the issue of whether Koziara's injury report was a contributing factor to his suspension and to his termination, nor is Veitz's testimony grounds for a new trial.

### 2. BNSF's affirmative defense

BNSF next contends that, as a matter of law, no reasonable jury could have found that the company failed to establish its affirmative defense under FRSA. The statute allows an employer to avoid liability even if an employee makes out a prima facie case of retaliation, provided that the employer establishes by clear and convincing evidence that it would have taken the same adverse action in the absence of the employee's protected activity. 49 U.S.C. § 42121(b)(2); *Harp*, 558 F.3d at 723.

At trial, BNSF sought to prove its defense by presenting evidence of consistently applied discipline and of zero-tolerance for theft. BNSF adduced numerous examples of employees who were disciplined harshly for theft. But Koziara was able to poke two critical holes in the company's defense by showing examples of how BNSF's purported zero-tolerance policy was not actually so consistently applied. First, there was evidence that it was commonplace for BNSF employees to take used ties. Tr. 1p, at 77:8-79:14. Yet for all BNSF's instance that it consistently punished such theft with termination, Koziara was able to elicit testimony from a long-term BNSF manager who admitted that he made no inquiry into statements and reports of other incidents of ties taken without authorization. Tr. 3a, at 53:1-

12

54:10. The same officer was also able to recount only one instance of BNSF disciplining employees for taking ties without permission. But that instance was much more egregious—three employees conspired to steal hundreds of ties and sell them—and BNSF's response was much less severe. Tr. 3a, at 50:16-52:25. BNSF's leniency in that egregious case, combined with the fact that the company did not investigate the employees who provided statements as part of Koziara's disciplinary process, entitled the jury to discredit BNSF's assertion that it would have terminated Koziara regardless of the injury report.

The second hole in BNSF's defense involved trial testimony that there were at least two other employees who were involved in the accident that injured Koziara: one operated the front-end loader and another was standing only a few feet behind Koziara. Tr. 1p, at 98:23-25, Tr. 2a, at 122:5-123:3. Neither employee suffered an injury that day, and despite the fact that they were directly involved in the incident, BNSF never investigated either employee for a possible rule violation. Tr. 2a, at 126:7-10. Veitz also testified that his investigation revealed two other employees who were "in the zone of danger," but who never received disciplinary action for their involvement. Tr. 2p, at 50:23-51:7, 95:9-22. In closing arguments, Koziara's counsel argued that this evidence seriously undermined BNSF's contention that it would have investigated and suspended Koziara regardless of whether he reported his injury. There was evidence to support counsel's argument, and the jury had an adequate basis to find that BNSF had failed to establish its affirmative defense with regard to Koziara's suspension.

BNSF is not entitled to judgment as a matter of law that it established its affirmative defense by clear and convincing evidence. Nor was the jury's verdict against the manifest weight of the evidence, so a new trial would not be appropriate.

### 3. Damages

Finally, BNSF challenges each aspect of the jury's damage award: lost wages, damages for emotional distress, and punitive damages. But BNSF's arguments on all three points essentially re-hash those that the company made at trial, and that the jury rejected. Evidence adduced at trial supported every component of the jury's damage award, and so the court will deny BNSF's motion.

### a. Lost wages

At trial, Koziara testified that his leg had healed as of January 2011, and that he was ready to return to work at that point. Tr. 4a, at 44:19-20. Koziara identified two possible jobs at BNSF that he could have held based on his seniority and physical limitations,[3] and he testified that he would have performed either job for 39 months—when he would have accrued 360 months of service credit to become eligible for retirement—if not longer. Tr. 4a, at 45:5-46:7, 47:2-48:15. But Koziara also acknowledged that since BNSF terminated him, he had not looked for full-time work. Tr. 4a, at 54:16-20. According to Koziara, if he had worked for two consecutive months outside the railroad industry, then he would have lost his entitlement to retirement benefits from the RRB. Tr. 4a, at 54:21-25, 71:12-20. Koziara also acknowledged that his physical limitations would have prevented him from returning to work at BNSF in the foreman position that he held in 2010. Tr. 4a, at 85:13-24. Based on Koziara's testimony, BNSF argued to the jury that he had failed to mitigate his damages and that his requested amount for lost wages was too speculative. Tr. 4p, at 94:25-99:4. The jury

---

[3] Unrelated to the incident on September 9, 2010, Koziara experienced other health issues that limited his physical abilities. Tr. 4a, at 63:4-22.

rejected these arguments and awarded Koziara $175,724.64 in lost wages and benefits. Dkt. 183, at 1.

BNSF first attacks the jury's award of lost wages on the ground that Koziara failed to mitigate his damages. To prove this defense, BNSF needed to show that: (1) Koziara "failed to exercise reasonable diligence to mitigate [his] damages"; and (2) "there was a reasonable likelihood that [Koziara] might have found comparable work by exercising reasonable diligence." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). As the court instructed the jury in this case,

> [i]f you find that a reasonable person would have taken steps to reduce the loss, and if you find that Mr. Koziara did not take such steps, then you should not include as damages any amount that Mr. Koziara could have avoided. If you find that a reasonable person would not have taken steps to reduce the loss under all of the circumstances existing in the case, then you should not consider Mr. Koziara's failure to act when you determine damages.

Dkt. 187, at 7.[4] Based on the evidence at trial, the jury was entitled to find that Koziara's fear of losing his retirement benefits reasonably entitled him to not look for alternative employment outside the railroad industry.

BNSF protests that a plaintiff cannot satisfy his duty to mitigate damages merely by testifying that he is afraid of losing benefits. Because that was Koziara's strategy in this case, BNSF contends that it was not obligated to show that reasonably comparable work was

---

[4] BNSF did not object to this instruction, although it did object to instructing the jury that "reasonable efforts" do not include efforts that subject the person making the effort to unreasonable inconvenience. Tr. 4p, at 67:1-24. The court overruled this objection. Regardless, BNSF does not raise specific instruction-based arguments in its post-trial motion, instead contending that it was error for the court to give *any* instruction on mitigation because Koziara admitted that he did not mitigate his damages.

available. Dkt. 218, at 8. These arguments misplace the burden of persuasion on the issue of mitigation. Koziara's position was that it would have been unreasonable for him to forgo his retirement benefits by taking a job outside the industry. BNSF did not present affirmative evidence of comparable employment that would have allayed Koziara's concerns. Without such evidence, the jury was free to find that Koziara acted with reasonable diligence in considering alternative employment, which would have satisfied his duty to mitigate his damages.

BNSF also criticizes the jury's award for lost wages as inappropriately speculative because Koziara admitted that he had applied for disability benefits (which contradicted his assertion that he could continue working), and because Koziara failed to prove that he would have received the same wage had he returned to work at BNSF. Koziara was not required to prove his damages with mathematical precision, but he had to offer more than pure speculation to support his request for lost wages. And he did so in this case. Koziara identified jobs that he could have performed at BNSF, and he provided a conservative, but realistic, estimate of the wages that he would have earned over the 39 months following his termination. The jury found this testimony to be credible, notwithstanding BNSF's arguments. The court will not second-guess the jury's view of the testimony, as there was an evidentiary basis to support the jury's award for lost wages in this case.

### b. Compensatory damages

The court considers three central questions when reviewing the jury's award for compensatory damages: (1) "whether the award is 'monstrously excessive'"; (2) "whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas"; and (3) "whether

16

the award is roughly comparable to awards made in similar cases." *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 566 (7th Cir. 2006) (internal citations omitted). The jury's award passes muster on each of these inquiries.

The award was not "monstrously excessive" and it bore a rational connection to the evidence. Koziara was a 32-year employee of BNSF, nearing retirement, and the company improperly fired him in retaliation for reporting a workplace injury. Koziara and his wife were forced to sell their home in response to the sudden loss of income. Mrs. Koziara testified that her husband experienced sleepless nights following his termination, as well as general anxiety over how to support his family. Tr. 4a, at 90:23-91:18, 93:12-94:23. Although BNSF elicited testimony from Koziara and from his wife that much of the emotional fallout from Koziara's termination has subsided over the years, the evidence largely confirmed that this was a detrimental, life-altering event for Koziara. This testimony was sufficient to support an award of damages for emotional distress. *See Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 580 (7th Cir. 1996) ("A plaintiff's testimony about emotional distress may, in certain instances, of itself suffice to support an award for nonpecuniary loss."). An award of $125,000 is significant. But it is certainly not monstrously excessive, and it is not without a rational connection to the evidence.

As for being roughly comparable to other awards, neither party identifies FRSA cases involving damages for emotional distress against which the court can measure Koziara's award.[5] *Barati v. Metro-North Railroad Commuter Railroad Company*, a post-trial opinion

---

[5] BNSF cites to older, non-FRSA cases in which wrongfully discharged plaintiffs recovered substantially less than $125,000 in compensatory damages. *See* Dkt. 215, at 33. Koziara cites to other, more recent cases in which the awards were higher. *See* Dkt. 217, at 45. As one federal court recently recognized, "[t]here is a dearth of caselaw interpreting claims for emotional distress damages under FRSA." *Fields v. Se. Pa. Transp. Auth.*, No. 14-cv-2491,

upholding an award of $40,000 for emotional distress in a FRSA case, therefore appears to be something of a rarity. 939 F. Supp. 2d 143, 152 (D. Conn. 2013). The court's decision in *Barati* did not summarize the evidence that supported the damage award, as the issue was only *whether* damages for emotional distress were available to plaintiffs under FRSA. *Id.* But pre-trial filings in that case suggest that the plaintiff's emotional distress was less severe than Koziara's. For example, the plaintiff in *Barati* had been employed for only a few months when he was terminated, and although he was initially fired, the railroad company later reinstated him with full seniority. Plaintiff's Memorandum in Opposition to Metro-North's Monition in Limine Regarding Emotional Distress Damages, at 2-4, *Barati v. Metro-North R.R. Co.*, No. 10-cv-1756 (D. Conn. 2013, filed Nov. 11, 2010), ECF No. 94. The discipline did not remain on the plaintiff's permanent record, and his claim of emotional distress was based largely on the defendant's delay in reinstating him and awarding him back pay. *Id.* In contrast, Koziara's termination was permanent, and it marked a sudden end to a 30-year career. Extrapolating from *Barati*, and relying on the cases that Koziara cites, the court concludes that an award of $125,000 is "roughly comparable" to awards in other cases.

### c. Punitive damages

BNSF moves the court to strike the jury's award of punitive damages because "there [was] no connection, direct or inferential, between Mr. Koziara's discipline and dismissal and any form of malicious or recklessly indifferent act by managerial employees" and because "BNSF established at trial that it has made a good faith effort to establish, implement, and comply with its stringent and thorough anti-retaliation policy." Dkt. 215, at 35. The court disagrees with BNSF's appraisal of the evidence adduced at trial.

---

2015 WL 4610876, at *6 (E.D. Pa. July 31, 2015).

BNSF's evidence of anti-retaliation policies and training cuts both ways. During the damages phase of the trial, BNSF presented evidence of its internal training on handling injury reports and on the importance of not retaliating against injured employees. The company's officers also testified to the specific measures that they took to handle Koziara's report in this case. From this evidence, a jury certainly could have concluded that punitive damages were not appropriate.

But as the court's instruction on punitive damages stated, the jury was allowed to assess punitive damages if it found that BNSF's managerial employees "disciplined Mr. Koziara with knowledge that it would violate the law, or in reckless disregard of Mr. Koziara's rights under the FRSA." Dkt. 187, at 7. Thus, Koziara's counsel argued to the jury that instead of establishing a good faith effort to avoid retaliation, the testimony from BNSF's officers established that they *knew* about Koziara's rights under FRSA, and that they terminated him for filing an injury report *in spite* of knowing that it was illegal to do so. The jury agreed, and there was evidence to support its finding.

For example, several witnesses confirmed that BNSF did not investigate or discipline the non-injured employees who were involved in the incident. Tr. 2p, at 95:9-22. Nor did BNSF investigate other instances of employees stealing ties for personal use when confronted with evidence that this was a common practice. Tr. 3a, at 53:1-54:10. One thing that these non-disciplined employees shared in common was that they never reported workplace injuries to BNSF; Koziara did. Thus, the jury could conclude that BNSF singled out Koziara for discipline because he reported an injury and because the company wanted to dissuade other employees from doing so. Moreover, Koziara elicited testimony that BNSF's officers have a compensation-based incentive, however small, that is linked to the number of injuries that

the company reports. Tr. 2a, at 96:10-97:15, Tr. 3a, at 92:4-94:9. Finally, with regard to BNSF's evidence of comprehensive anti-retaliation training, Koziara raised significant doubts as to whether the decision makers in this case had received FRSA-specific training at the time that they terminated Koziara. Tr. 4p, at 45:11-54:3. From this evidence, the jury was entitled to reject BNSF's argument that the company had undertaken a good faith effort to implement an anti-retaliation policy.

## B. Koziara's motion for equitable relief

Koziara moves for equitable relief in the form of an order requiring BNSF to: (1) report to the RRB that Koziara earned $175,724.64 in compensation from January 2011 to April 2014; (2) withhold Koziara's share of any RRB taxes from the award of lost wages; and (3) pay its and Koziara's RRB taxes. Dkt. 213, at 6. The thrust of Koziara's motion is that he wants BNSF to do everything in its power to ensure that the RRB credits him with 39 months of service, which will bring his total service to 30 years. BNSF opposes Koziara's motion on the grounds that it is an attempt to short-circuit the statutory and regulatory frameworks under which the RRB reviews claims for benefits. The court agrees and will therefore deny Koziara's motion.

The RRB will eventually determine whether Koziara's lost wage award in this case qualifies as compensation for time lost. 20 C.F.R. § 211.3. As part of this determination, the RRB may consider whether Koziara maintained his employment relationship with the railroad industry throughout the relevant 39-month period. *Id.* § 204.6. BNSF and Koziara will have the opportunity to present evidence and argument on this point. *Id.* § 204.2. Any final order of the RRB will be reviewable by a United States Court of Appeals. 45 U.S.C. § 231g; *Sass v. U.S. R.R. Ret. Bd.*, 305 F. App'x 288, 290 (7th Cir. 2008).

Koziara acknowledges that this court cannot directly require the RRB to give him service credit, and so his strategy is to obtain an equitable order locking BNSF into supporting his future request to the RRB (which the company is apparently reluctant to do). Koziara observes that in other cases, BNSF has insisted that it be allowed to withhold an employee's share of RRB benefits. *See, e.g.*, *Cowden v. BNSF Ry. Co.*, No. 08-cv-1534, 2014 WL 3096867, at *12 (E.D. Mo. July 7, 2014). But these cases confirm only that BNSF *can* support an employee's application for service credit; Koziara has not identified authority holding that BNSF *must* do so as a result of Koziara's success on a retaliation claim under FRSA. Any inconsistency between BNSF's position in this case and its position in other cases is a matter of strategy for the company, and not a basis from which the court can require BNSF to support Koziara's case before the RRB.

BNSF's reluctance in this case appears to be based on its view of the merits of Koziara's retaliation claim; particularly his contention that he was still able to work during the 39-months that he was receiving disability benefits. Koziara contends that in light of the jury's verdict, BNSF should be estopped from presenting any such arguments to the RRB. But this court is not the proper forum in which to settle the question of estoppel. That determination would rest with the tribunal in which BNSF raises potentially precluded arguments.

It may be in BNSF's best interest to withhold Koziara's share of the RRB taxes. And it may even be futile for the company to oppose Koziara's request for 39 months of service credit. But those are strategic decisions for BNSF to make, not equitable relief that the court must provide to Koziara under FRSA. The court will deny Koziara's motion.

ORDER

IT IS ORDERED that:

1. Defendant BNSF Railway Company's motion for judgment as a matter of law, Dkt. 212, is DENIED.

2. Plaintiff Michael Koziara's motion for equitable relief, Dkt. 213, is DENIED.


Entered February 16, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge