IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL KOZIARA,

                Plaintiff,

v.

BNSF RAILWAY COMPANY,

                Defendant.

OPINION & ORDER

13-cv-834-jdp

    A jury found in favor of plaintiff Michael Koziara on his claim that defendant BNSF Railway Company retaliated against him for reporting a workplace injury, in violation of the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20109. Koziara now moves for an order awarding him attorney fees, litigation costs, and pre- and post-judgment interest. Dkt. 228. BNSF objects for several reasons. BNSF also moves to stay enforcement of the judgment pending the resolution of its appeal to the Seventh Circuit. Dkt. 251.

    All told, Koziara seeks \$637,627.50 in attorney fees, \$41,000.70 in litigation costs, and \$45,643.34 in pre- and post-judgment interest. The court will grant Koziara's motion in substantial part, reducing the amounts that he seeks to account for BNSF's valid objections. The court will also grant BNSF's motion to stay enforcement of the judgment, which Koziara does not oppose.

## BACKGROUND

    The court recounted the material facts of the case in its summary judgment opinion, Dkt. 73, and summarized them in its post-trial opinion, Dkt. 227. For purposes of this opinion, only a limited description of the case is necessary.

This is a retaliation case. Koziara used to work for BNSF, in the Maintenance of Way department. In 2010, Koziara suffered an injury while supervising a crew that was removing crossing planks. Koziara reported the injury to BNSF, which investigated and determined that Koziara had violated the company's safety rules. As a result, BNSF suspended Koziara. While investigating, BNSF also learned that Koziara had taken company property on an earlier occasion. After separate disciplinary proceedings, BNSF fired Koziara for theft.

Koziara filed suit in this court in December 2013. Both sides moved for summary judgment, which the court substantially denied. After a four-day trial, a jury found in Koziara's favor and awarded him $425,724.64 for lost wages, pain and suffering, and punitive damages. BNSF moved for judgment as a matter of law or, in the alternative, for a new trial, which the court denied. BNSF has since appealed to the Seventh Circuit.

## ANALYSIS

**A. Koziara's motion for attorney fees, litigation costs, and interest**

A plaintiff who prevails on a claim under the FRSA is entitled to recover his "litigation costs, expert witness fees, and reasonable attorney fees." 49 U.S.C. § 20109(e)(2)(C). BNSF does not challenge Koziara's entitlement to attorney fees, litigation costs, and interest. But it has lodged a lengthy objection to the specific amounts that Koziara seeks. Although some of BNSF's points are valid, the court will overrule many of its objections.

**1. Attorney fees**

The court uses a "lodestar method" to determine a reasonable fee, "multiplying the 'number of hours reasonably expended on the litigation by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (internal alterations omitted)

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar method applies even in cases where the prevailing party has a contingency fee agreement with his counsel, as Koziara does in this case. *Id.* "Once this amount is calculated, the district court may adjust the amount up or down to take into account various factors regarding the litigation." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003).

Koziara seeks $637,627.50 in fees for the 1,633 hours that his attorneys spent working on this case. Dkt. 247, at 37. The three attorneys who performed most of this work ordinarily charge $650 per hour, $525 per hour, and $350 per hour, and the paralegals and assistants ordinarily charge $175 per hour.

The Seventh Circuit "define[s] a reasonable hourly rate as one that is derived from the market rate for the services rendered [and] presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett*, 664 F.3d at 640 (citations and internal quotation marks omitted). As evidence of reasonableness, Koziara has submitted affidavits from his attorneys, who indicate that their rates in this case are the same rates that they charge to hourly clients for similar work. Dkt. 230, ¶ 9; Dkt. 231, ¶ 8; Dkt. 232, ¶ 12. These affidavits are persuasive because "[t]he best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). Koziara has also submitted affidavits from other attorneys who believe that the rates that Koziara's attorneys charged are reasonable. Dkt. 233, ¶ 14; Dkt. 234, ¶ 13; Dkt. 236, ¶¶ 5, 7. This "'next best evidence' of an attorney's market rate" further supports the reasonableness of the rates that Koziara's attorneys charged. *Pickett*, 664 F.3d at 640. From the affidavits that Koziara has submitted in support of his fee request, and

because BNSF does not object to the rates, the court concludes that the rates that Koziara's attorneys charged in this case were reasonable.

The more difficult issue is the reasonableness of the hours that Koziara's attorneys billed. "[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Id.* at 653-54 (citations and internal quotation marks omitted). Here, Koziara's attorneys took this case on a contingency, which means that the court does not have a readily available check on whether the total fee is reasonable. And because Koziara's success at trial entitles him to fee-shifting, the court must be particularly vigilant for fees that an attorney would not ordinarily or reasonably bill to a paying client.

BNSF objects to time spent on: (1) "inter-office conferences"; (2) depositions at which two of Koziara's attorneys appeared and for which both attorneys billed; (3) a mock trial that Koziara held; and (4) work that non-record attorneys performed on the case. BNSF also asks for a downward adjustment because many of Koziara's billing entries are vague. Finally, BNSF asks for a further downward adjustment given the relatively simple nature of the case. Some, but not all, of BNSF's arguments are persuasive.

### a. Inter-office conferences

BNSF's first objection is to the hours that Koziara's attorneys spent on "inter-office conferences." According to BNSF, these entries account for more than 185 hours and about $85,000 of Koziara's requested fee.[1]

The Seventh Circuit has rejected "a blanket rule according to which internal communication time never would be reimbursed." *Tchemkou v. Mukasey*, 517 F.3d 506, 511

---

[1] Koziara explains that BNSF has miscalculated these figures. His attorneys actually spent 171 hours on inter-office conferences, for which they billed $75,290.00. Dkt. 247, at 4 n.4.

(7th Cir. 2008). But district courts must nevertheless "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 858 (7th Cir. 2009). Here, most of the entries for inter-office conferences are vague. They typically follow one of two generic formats:

- Conference with [person] regarding case status and strategy; or
- Attend team meeting regarding case strategy and status.

*See generally* Dkt. 243-1, at 2-14 (listing entries from Dkt. 230-2). The problems with these entries are apparent when compared to other, more detailed entries that indicate the specific tasks that Koziara's attorneys completed. *See, e.g.*, Dkt. 230-2, at 8 ("Attend team meeting regarding reply in support of plaintiff's motion for summary judgment and the FELA-trial"), 9 ("Conference with [attorneys] regarding the interplay between the FELA-case and the FRSA-case"), ("Attend team meeting regarding witness order and amending exhibit list").

Koziara defends his vague entries by arguing that the surrounding entries identify the specific topics or strategy items that his attorneys discussed. This argument is consistent with Seventh Circuit precedent that entries "although vague when read in isolation, are not impermissibly vague when viewed in the context of the surrounding documentation." *Berberena v. Coler,* 753 F.2d 629, 634 (7th Cir. 1985); *see also Soleau v. Ill. Dep't of Transp.,* No. 09-cv-3582, 2011 WL 2415008, at *8 (N.D. Ill. June 9, 2011) ("Each entry should be considered in context of the surrounding entries.").

After reviewing Koziara's billing records, the court is satisfied that surrounding entries provide sufficient context for many, but not all, of the vague entries. Generic entries for conferences about "case strategy and status" appear too often for the court (or BNSF) to reliably tether them to particular tasks or stages of the litigation. Although these conferences

5

were short—most were 0.1 or 0.2 hours—they were frequent. A reduction in the hours that Koziara has submitted is therefore appropriate. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."). The court will reduce the $75,290.00 that Koziara's attorneys billed for these conferences by one third, or $25,096.67.

### b. Depositions

BNSF's second objection is that Koziara had two attorneys appeared at 9 of the 16 depositions in this case, and that the court should not award fees that the second attorney billed for these appearances.[2] According to BNSF, Koziara is seeking fees for about 150 hours' worth of redundant appearances and travel time (Koziara indicates that these fees amount to $63,250). BNSF also contends that the court should not award Koziara the $4,500 in fees that he seeks for his attorneys' appearances at a deposition in a different, but related, personal injury case.

"Having more than one attorney attend a deposition or court proceeding is not *per se* unreasonable." *Pawell v. Metro. Pier & Exposition Auth.*, No. 03-cv-3158, 2005 WL 1902116, at *7 (N.D. Ill. Mar. 4, 2005) (citing *Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987)). Instead, the reasonableness of billing for a second attorney at a deposition depends on the complexity of the case. *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 525 (7th Cir. 1995). Here, the basic facts were not overly complicated. *Cf. Soleau*, 2011 WL

---

[2] Two attorneys appeared on Koziara's behalf for the depositions of: Charles Arentz, Heather Miller, Allen Mitchell, Jeffrey Schaller, Daniel Stern, Brad Underhill, Eric Weber, Mark Wiens, and Gregory Zielke. Dkt. 243-2.

2415008, at *7 (excluding a second attorney's time at a deposition because the "case was not complex. The incidents of sexual harassment were largely uncontested as were the facts concerning [the defendant]'s response"). And the tasks that the second attorney completed at the depositions that he attended were mostly clerical: he took notes and participated in discussions during breaks. Dkt. 248, ¶ 10.

Koziara's characterization of the importance of these depositions is a bit exaggerated, and his counsel's statement that the second attorney's presence "resulted in questions being asked that contributed to [Koziara]'s success," *id.*, is conclusory. Billing for each hour that two attorneys spent attending depositions in this case would be unreasonable. But discounting the second attorney's fees entirely would be unfair. Six of the nine depositions occurred on back-to-back days: one attorney took the first day's depositions and the second attorney took the second day's depositions. Thus, Koziara's attorneys avoided inefficiency by travelling to, and preparing for, these depositions together. The court will reduce the $63,250.00 that Koziara's attorneys billed for these depositions by 25 percent (essentially disallowing half of the fees that the second attorney billed), or $15,812.50.

As for the deposition in Koziara's separate personal injury case, the court will overrule BNSF's objection. BNSF's counsel urged Koziara's counsel to attend the deposition. *Id.* ¶ 12. At the deposition, different counsel for BNSF refused to stipulate that the company would not use Koziara's testimony to impeach him in this case, which meant that his counsel felt obligated to stay for it. Dkt. 248-8, at 2. Under these circumstances, it was reasonable for Koziara's counsel to bill him for the hours that they spent at the deposition. BNSF's objection to these fees is overruled.

### c. Mock trial

BNSF's third objection is to $40,195.00 in fees that Koziara's attorneys billed for conducting a mock trial.[3] BNSF asks the court to eliminate or reduce any fee award for the mock trial because this case was not complicated enough to justify one.

District courts in this circuit have routinely reduced awards for mock trials, particularly in cases that are factually and legally straightforward. *See, e.g., Montanez v. Fico*, 931 F. Supp. 2d 869, 882 (N.D. Ill. 2013), *aff'd sub nom. Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014); *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007). *But see Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1046 (N.D. Ill. 2013) (no reduction for a "focus group" beyond the reduction for the plaintiff's limited success on the merits). As the court indicated above, the underlying facts of this case were not complicated. And presenting those facts to the jury did not create unique challenges—the parties completed the liability phase of the trial in three days. Even though FRSA cases are not as prevalent in the federal courts as are other types of employment-related litigation (e.g., retaliation claims under Title VII of the Civil Rights Act of 1964), the statute's burden-shifting framework is relatively straightforward.

Koziara explains that the mock trial affected his trial strategy because the mock jurors identified one of the apparent weaknesses in Koziara's case as strong evidence in his favor. Dkt. 248, ¶ 15. That may be so, but it is not clear why it required an entire mock trial to develop this strategy. Given the nature of this case, the court concludes that Koziara' mock trial was excessive preparation and it would be unreasonable to include the hours that his

---

[3] BNSF contends that the fees for the mock trial exceed $45,000. But BNSF has incorrectly included $4,935 in fees that Koziara's attorneys billed preparing for the actual trial.

attorneys billed for it in a fee award. The court will therefore disallow the $40,195.00 in fees that Koziara's attorneys billed for the mock trial.

### d. Work that non-record attorneys performed

BNSF's fourth objection is to the fees that Koziara seeks for work that non-record attorneys performed in this case. According to BNSF, these attorneys billed about 15.5 hours.

BNSF observes that Koziara did not include evidence to support the reasonableness of the hourly rates that these attorneys charged. Fair point. But their rates were less than the rates of the record attorneys who would have otherwise performed the work. Thus, any inefficiency from these attorneys being less familiar with the case than the record attorneys were likely did not increase the overall fee. And as a check against unreasonableness, Koziara has submitted affidavits from other area attorneys who confirm that his attorneys' fees (which include bills for work that non-record attorneys performed) are reasonable. Dkt. 233, ¶ 14; Dkt. 234, ¶ 14; Dkt. 236, ¶ 5. There is no reason why every attorney who worked on this case needed to formally appear or why the attorneys who did appear could not assign discrete tasks to other available attorneys. BNSF's objection to these fees is overruled.

### e. Downward adjustment for vague entries

BNSF seeks a blanket downward adjustment for all entries that are vague. Beyond the entries relating to inter-office conferences discussed above, BNSF also identifies a few strings of entries that it contends are examples of vague billing records. *See* Dkt. 242, at 16-18.

The court agrees that the entries that BNSF has identified are not as specific as they should be: Koziara's attorneys typically described their work in generic terms (e.g., "edit discovery" and "review discovery responses"), and the surrounding entries provide only limited context. *See, e.g.,* Dkt. 230-2, at 4-5. Although Koziara has buttressed his fee request

9

with supporting affidavits from attorneys who indicate that the total fee is reasonable, that does not completely allay concerns about improper billing. Many of Koziara's billing entries are so vague that they cannot be meaningfully reviewed. As discussed above, the traditional proof of reasonableness—whether the client actually pays the bill—is not present here. An additional 10 percent reduction is therefore appropriate to account for concerns about the vagueness in Koziara's fee petition. The court has already reduced the fee award to $556,523.33, and so a 10 percent reduction amounts to $55,652.33

### f. Downward adjustment based on the simplicity of the case

BNSF also seeks a blanket downward adjustment for the entire fee because of the relative simplicity of the case. According to BNSF, the court should further adjust the award after reducing it for the specific objections that BNSF has raised.

"There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639. BNSF nevertheless identifies two factors from the Supreme Court's decision in *Hensley* that support a downward adjustment. Specifically, BNSF argues that an adjustment is necessary because of "the novelty and difficulty of the questions," and because of "awards in similar cases." *Hensley*, 461 U.S. at 430 n.3. After considering these factors, the court concludes that no additional downward adjustment is appropriate.

Beginning with the "novelty and difficulty of the questions," this case was not as simple as BNSF suggests that it was. The basic facts were straightforward. But the court has already accounted for this by reducing the hours that Koziara's attorneys recorded for inter-office conferences, redundant attorney work at depositions, and an unnecessary mock trial. No further reductions are necessary. The FRSA is a relatively new statute (compared to Title

VII, for example), and only a few federal courts have taken FRSA cases to trial, which makes Koziara's case somewhat unique. And in terms of legal issues, this case involved a novel question about whether a "chain of events" theory could support a plaintiff's burden to prove causation under the FRSA. Because appellate precedent on this question is sparse, Koziara's counsel (and BNSF's counsel, for that matter) spent considerable time briefing the issue at summary judgment, before trial, and after trial. *See* Dkt. 52; Dkt. 60; Dkt. 132; Dkt. 140; Dkt. 215; Dkt. 217; Dkt. 218.

Likewise, awards in similar cases do not require a downward adjustment. In *Barati v. Metro-North Railroad Company*, a jury awarded about $291,000 in damages on a plaintiff's FRSA claim, and the court awarded $273,536.25 in attorney fees. 939 F. Supp. 2d 153, 155 (D. Conn. 2013). The *Barati* court approved hourly rates that are comparable to the rates that Koziara's attorneys have charged, for about 590 hours of work. *Id.* at 155-58. In *Wallis v. BNSF Railway Company*, a jury awarded $20,000 in damages, and the court awarded $231,306.66 in attorney fees. No. 13-cv-40, 2014 WL 1648472, at *1-7 (W.D. Wash. Apr. 23, 2014). The *Wallis* court approved rates that are somewhat lower than the rates that Koziara's attorneys have charged, for about 700 hours of work. *Id.* at *6 n.8.

The awards for attorney fees in *Barati* and *Wallis* both involved lower rates and fewer hours. But a straight comparison of the raw numbers in other cases does not necessarily determine whether the hours expended *in this case* were reasonable. *Tchemkou*, 517 F.3d at 511. Instead, BNSF would have to "show that the cases cited were similar to the present case with respect to volume of the background materials, the procedural nature of the case, and the number and complexity of the issues presented." *Id.* The court has already reduced Koziara's award, and it is now closer to awards in other cases. Because BNSF has not

presented a detailed analysis of *Barati* and *Wallis*, the court is not persuaded that these cases require further adjusting the presumptively reasonable lodestar fee.

BNSF's blanket objection to Koziara's request for fees because of the simplicity of this case, and because of awards in other cases, is overruled.

### 2. Litigation costs

Koziara seeks $41,000.70 in litigation costs. BNSF does not dispute that, in the context of the FRSA, "litigation costs" include more expenses than the "costs" that Federal Rule of Civil Procedure 54 authorizes courts to award to prevailing parties.[4] Koziara moves to recover the out-of-pocket expenses that his attorneys reasonably incurred and that they would normally pass on to fee-paying clients. *See Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984) ("'[A]ttorney's fee includes out-of-pocket expenses in preparation for trial."); *Walters v. Mayo Clinic Health Sys.—Eau Claire Hosp., Inc.*, 91 F. Supp. 3d 1071, 1085 (W.D. Wis. 2015) ("[Section] 2617(a)(3) requires the court to award 'other costs,' which courts have interpreted to mean 'reasonable out-of-pocket expenses,' including 'costs beyond those normally allowed under Fed. R. Civ. P. 54(d).'" (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002))). BNSF objects to these expenses on the grounds that Koziara: (1) has not submitted supporting documentation and the entries for the asserted expenses are vague; (2) is not entitled to expenses for duplicative appearances at depositions; and (3) is not entitled to expenses for the improperly billed mock trial. Some, but not all, of these objections are valid.

---

[4] Koziara has not submitted a separate bill of costs, presumably because these costs are included in the expenses that he can recover under the FRSA.

Koziara has submitted a spreadsheet describing each expense that he incurred in this case, Dkt. 230-3, and one of his attorneys has verified that this spreadsheet accurately reflects the out-of-pocket expenses that counsel incurred, Dkt. 230, ¶ 10. BNSF seems to want the underlying invoices, reimbursement checks, and other proof of expenses. Although these documents might have preempted objections to Koziara's expenses, producing them would have been a considerable, and needless, undertaking because there are almost 200 entries in Koziara's spreadsheet. BNSF is correct that many of the entries in this spreadsheet are somewhat vague. But viewing Koziara's submissions as a whole, the court is persuaded that the expenses were reasonably incurred in prosecuting this case. The court will therefore overrule BNSF's blanket objection that the expenses lack supporting documentation.

BNSF also challenges the expenses incurred for a second attorney to attend depositions and for conducting the mock trial, and it seeks reductions to correspond with its objections to the attorney fees associated with these tasks. The court substantially overruled BNSF's objections to the underlying fees for the second attorney's appearance at the depositions, and so it will substantially overrule BNSF's objections to the associated expenses. But these entries require one adjustment. For the six depositions that occurred on back-to-back days in June 2014, the second attorney was going to incur travel and hotel expenses anyway because he conducted the second day's depositions. The same is not true for the three depositions that occurred in August 2014—the second attorney did not conduct any depositions on that trip. The court will therefore disallow the attorney's travel expenses for these depositions. These expenses amount to $1,611.93.[5]

---

[5] The relevant entries appear to be lines 47, 59, 66, and 67 in the spreadsheet. Dkt. 230-3.

13

As for the mock trial, the court disallowed Koziara's attorney fees for this aspect of the case. Thus, the court will also disallow the expenses that Koziara's attorneys incurred in conducting the mock trial. These expenses amount to $2,334.42.[6]

The total reduction to Koziara's expenses will be $3,946.35.

### 3. Pre- and post-judgment interest

Koziara seeks an award of pre-judgment interest on his damages for lost wages and emotional distress, and on his litigation costs. BNSF objects to paying interest on Koziara's award for emotional distress. This is a valid objection.

Neither party directs the court to binding precedent addressing pre-judgment interest in the context of the FRSA. But in other employment discrimination cases, the Seventh Circuit has held that "[o]nly back pay and expenses incurred in the past may be augmented by prejudgment interest." *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987); *see also Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 925 (7th Cir. 1991). This reasoning in is persuasive, and the court will apply it to Koziara's case. He is not entitled to pre-judgment interest on his damages for emotional distress.

BNSF does not dispute that Koziara is entitled to $24,044.56 in pre-judgment interest for his award of lost wages. BNSF also does not dispute that Koziara is entitled to $405.35 in pre-judgment interest for his litigation costs (although the parties will need to recalculate this amount to account for the court's adjustments to Koziara's recoverable litigation costs).[7] Finally, BNSF does not dispute that Koziara is entitled to $2,317.65 in

---

[6] The relevant entries appear to be lines 105-23 and 129 in the spreadsheet. Dkt. 230-3.

[7] A heading in BNSF's brief indicates that it opposes pre-judgment interest on any award "other than backpay damages." Dkt. 242, at 21. But BNSF does not actually address whether Koziara is entitled to pre-judgment interest for his litigation costs. *Id.* at 21-23. Thus, the

post-judgment interest. The court will therefore award Koziara these amounts in pre- and post-judgment interest.

### 4. Final award for attorney fees, litigation costs, and interest

The court will grant Koziara's motion for attorney fees and costs in substantial part. As explained above, BNSF has demonstrated that the following adjustments are appropriate:

- Reducing Koziara's award for attorney fees by $136,756.50, which includes a $25,096.67 reduction for unreasonably billed hours relating to inter-office conferences, a $15,812.50 reduction for unreasonably billed hours relating to a second attorney attending depositions in this case, a $40,195.00 reduction for unreasonably billed hours relating to the mock trial, and a 10 percent (or $55,652.33) reduction to the remaining fees for impermissibly vague billing entries;

- Reducing Koziara's award of litigation costs by $3,946.35, to account for unreasonably billed expenses relating to a second attorney attending depositions in this case and to conducting the mock trial; and

- Reducing Koziara's award of pre-judgment interest by $18,875.78, to account for the fact that Koziara cannot recover pre-judgment interest on his damages for emotional distress.

As a result, the court will direct BNSF to pay $500,871.00 in attorney fees, $37,054.35 in litigation costs, and $26,767.56 in pre- and post-judgment interest (subject to adjustments that the parties make to account for adjustments to the underlying amounts).

### B. BNSF's motion to stay execution of the judgment

BNSF moves to stay execution of the judgment in this case pending the resolution of its appeal to the Seventh Circuit. Dkt. 252. Koziara does not oppose this request.

Under Rule 62(d), an "appellant may obtain a stay by supersedeas bond." Here, the parties have stipulated to a $1,000,000 bond, Dkt. 253, ¶ 4, and BNSF indicates that it will post the bond promptly after approval, Dkt. 252, at 2. The court concludes that these terms

---

argument is waived. *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004).

are appropriate and will therefore grant BNSF's unopposed motion. Execution of the judgment will be stayed during: (1) BNSF's appeal to the Seventh Circuit; (2) proceedings relating to any petition for a writ of certiorari to the United States Supreme Court; (3) any subsequent proceedings on the merits in the Supreme Court; and (4) any subsequent proceedings before this court in the event of a remand.

## ORDER

IT IS ORDERED that:

1. Plaintiff Michael Koziara's motion for attorney fees and costs, Dkt. 228, is GRANTED in part, as explained above:

    a. The court awards plaintiff his reasonable attorney fees in the amount of $500,871.00.

    b. The court awards plaintiff his reasonable litigation costs in the amount of $37,054.35.

    c. The court awards plaintiff pre- and post-judgment interest in the amount of $26,767.56.

2. Defendant BNSF Railway Company's motion to stay the judgment, Dkt. 251, is GRANTED.

Entered August 19, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge